UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ATLANTIC FUNDING CORPORATION, as
assignee of and successor-in-interest
to Resolution Trust Corporation, as
conservator for Trustbank Federal
Savings Bank,

        *Plaintiff-Appellee,*

        v.

BARRIE M. PETERSON, individually
and as Trustee,

        *Defendant-Appellant.*

No. 00-1807

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-91-1084-A)

Argued: June 4, 2001

Decided: July 18, 2001

Before WILKINSON, Chief Judge, KING, Circuit Judge, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Bruce Wayne Henry, HENRY & O'DONNELL, P.C.,
Fairfax, Virginia, for Appellant. James Robert Schroll, BEAN, KIN-

NEY & KORMAN, P.C., Arlington, Virginia, for Appellee. **ON BRIEF:** James T. Bacon, ALLRED, BACON, HALFHILL, LANDAU & YOUNG, P.C., Fairfax, Virginia, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

The question before us is whether the district court erred in ordering and confirming a second auction of stock certificates. The district court vacated the first auction because of potentially fraudulent bidding and a violation of the court's own order. Because the district court did not abuse its discretion in ordering and confirming the resale, we affirm.

I.

Atlantic Funding Corp. holds a judgment in the amount of $1,217,210.96 plus interest against Barrie M. Peterson and Barrie M. Peterson, Trustee (collectively "Peterson"). In execution of the judgment, stock certificates surrendered by Peterson were auctioned off by order of the court on September 14, 1999. The proceeds of the sale would be used to satisfy, in whole or in part, the judgment against Peterson.

The auction was to be conducted by the United States Marshal. Among other things, the court order required the highest bidder to tender the purchase price of the stock immediately after the sale or the next highest bidder would be awarded the stock. The sale would not be considered final until confirmed by the district court.

Three bidders participated in the first auction: Mr. Nichols, Barry Peterson's son, Scott, and Atlantic. The final bid prices were substan-

tially higher than the estimated fair market values for the stock. The Marshal also unilaterally extended the time for payment. Atlantic objected to this auction. The district court held an evidentiary hearing on these objections.

After the hearing, in a ruling from the bench, the district court determined that Nichols had bid up the price of the stocks without ever intending to purchase them. The court decided these actions bordered on the criminal. In addition, it found nothing in the order allowing the Marshal to extend the time for payment. The court found fault with the procedure of and conduct at the auction, so it ordered a second auction.

The second auction took place on April 19, 2000 pursuant to the court's order. At the second auction Atlantic and Peterson participated, with Atlantic making the high bid for five of the stocks and Peterson, on behalf of various entities, making the high bid for four of the stocks. The total amount paid for the stocks at the second auction was substantially less than at the first auction. Peterson's objection to the resale on the grounds that the first auction should not have been set aside was subsequently denied. The district court then approved the resale on June 19, 2000.

## II.

Federal courts are vested "with power to impose silence, respect and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat 204, 227 (1821). In this case, the district court, utilizing its settled authority, set aside the first auction and ordered a subsequent one. Such inherent power "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The decision to confirm a sale, however, is "within the judgment and discretion of the tribunal ordering the sale" and will not be disturbed absent abuse. *American Trading & Production Corp. v. Connor*, 109 F.2d 871, 872 (4th Cir. 1940); *see also American Tramp Ship. & Dev. Corp. v. Coal Export Corp.*, 276 F.2d 570 (4th Cir. 1960). Therefore, we review the district court's ruling for abuse of discretion.

A district court may abuse its discretion in several different ways. For example, a district court abuses its discretion if it fails or refuses

to exercise discretion and instead decides by general rule or arbitrarily. *See Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 661-62 (1978). Similarly, a district court abuses its discretion if it fails to adequately consider the factors constraining its exercise of discretion. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). Finally, a district court abuses its discretion if its decision is based on erroneous legal or factual premises. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-02 (1990).

## III.

We do not think the district court violated the ground rules noted above. The court was faced with evidence of irregularities and misconduct at the first auction. In deciding to order a second auction, the court carefully weighed the evidence before it and considered the disadvantages to a second auction. It did not act in an arbitrary manner. Rather, it reasonably determined the best way to preserve the integrity of its order was to require a second auction.

## A.

The first problem with the auction was irregular bidding. Mr. Nichols arrived at the auction and bid up prices for the stock to levels way above their estimated values. He did so to the benefit of Peterson and the detriment of Atlantic. Mr. Nichols possessed neither the means nor the intention to ever buy the stock. The district court found Mr. Nichols to be "close to the line in terms of criminal conduct." Although the district court recognized Peterson benefitted from the higher bids, it found no evidence that he participated in or orchestrated Mr. Nichols' conduct. However, there remained an evident appearance of impropriety surrounding the first auction. The district court considered this enough to set aside the auction for fraud.

Courts have the inherent power to prevent corruption of the judicial process. There was ample evidence of bidding problems at the first auction that artificially inflated the amount paid for the stocks applied to satisfaction of Atlantic's judgment. The court was well within its discretion to find that the irregularities were so great that they called the basic integrity of the process into question. Accordingly, a second auction lay within the court's discretion.

## B.

The district court also sought to ensure the sanctity of its own orders when it set aside the first auction. By extending the time for payment, the Marshal violated the court's order for the first auction. The Marshal did so despite the objections made by Atlantic before the auction began. Not only was this in direct violation of the court's order, it also may have encouraged the inflated bidding by Nichols.

Courts act well within their power when they ensure "submission to their lawful mandates." *Anderson*, 6 Wheat at 227. Faced with a direct violation of its own order, the district court determined that the best remedy was to order a second auction. This action was once again within the court's discretion.

## IV.

For the foregoing reasons, the judgment of the district court ordering a second auction and confirming the resale of shares therein, is affirmed.

*AFFIRMED*