EDMONDSON, Circuit Judge,
concurring in denial of en banc rehearing:
Decisions on whether or not to grant en banc rehearing are not decisions on the merits of the appeal. As I understand it, the only judges of this Court who have had the merits of this case put before them for decision are the members of the panel who decided the case. Nevertheless, it, in the past dozen years or so, has become the fashion — moving from the exceptional to the normal — of our Court for some judges, who were not on the pertinent panel, to file dissents regularly when en banc rehearing is denied. The dissents almost always dwell on their view of the incorrectness of the merits decision by the panel. The writing of the dissents, the reading of the dissents, and the replying to the dissents all consume judicial time and energy that are limited commodities. I am not sure what the utility of this new practice is. For example, as near as I can tell, nothing indicates that dissents filed on denials of en banc rehearing make it more likely that the Supreme Court will grant certiorari in a case of our Court. Still, I do not question the power of my colleagues to file dissents in these circumstances; and I do appreciate that, at times, it feels good to say one’s piece. (On en banc denials, I have dissented a time or two myself over the decades.) But I do wonder about the cost-benefit analysis on the whole for the law, for the Court, and for the Country of regular dissents to denials of en banc rehearing.
About this case, I have a few observations to make. Lawyers, as members of the Courts’ Bars (that is, as officers of the Courts) are often, and in a variety of ways, treated by the Courts better or worse than nonlawyers. I stress that I do not see the Courts’ inherent powers to supervise the members of their Bars as “overriding” (that is, cancelling) the FLSA statute’s treatment of fees. The statute is law, general law tied to the outcome of FLSA suits.
I see the Courts’ inherent powers over Bar members as a separate and pre-existing font of law and legal authority that specifically governs the conduct of lawyers as lawyers, regardless of the outcome of the case: the law of inherent powers supplements the FLSA statute to make up the whole of the applicable law in this case. Therefore, I see the whole applicable law to run this way: When the outcome favors the plaintiff, fees shall be awarded unless the District Court, in the reasonable exercise of its power to supervise lawyers in their practice in cases before the Court, determines that an award of fees (given the specific circumstances of a particular *890 case) is not right — not right directly because of lawyer conduct related to the specific case. Thus, fees nearly always are to be awarded; but never are the Courts altogether stripped of the power to supervise lawyer conduct through the grant or withholding of fees.
That Courts have the inherent and main — if not exclusive — authority (along with the duty and responsibility) to supervise their Bar members is, I believe, no innovative idea. And that Courts can use the control of attorney fees as a means of exercising the inherent power to supervise lawyer conduct in particular cases seems uninnovative too. See Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) (court may per inherent power assess attorneys fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive purposes); Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (federal courts have inherent powers to assess attorneys fees against counsel).
The inherent powers to supervise lawyers are important to the Courts. I suggest that Courts ought to be highly reluctant to cede this traditional power dealing with control of lawyer conduct in respect to cases that come before the Courts: reluctant for practical reasons touching upon the best interest of the judicial system, Bar, and public as well as reluctant for important separation-of-powers reasons. But I do assume that Congress could abrogate the Courts’ inherent power to control (that is, control by governing fee awards) lawyers’ conduct, if Congress did so specifically, explicitly, and directly. Nevertheless, abrogation is not what has happened in the FLSA, as I understand it.
Congressional abrogation of traditional Court powers ought not to be lightly assumed. And I maintain it is by no means clear that Congress intended that the FLSA in any way interfere with the Courts’ traditional supervisory powers over the course of litigation and over lawyer conduct, although Congress did intend for fees to be assessed against defendants ordinarily when the plaintiff obtains a winning outcome. I believe I am correct to say that Congressional abrogation of the Court’s inherent power to supervise lawyer conduct must be clear and plain, before the Courts let that critical power get away. See Chambers, 111 S.Ct. at 2134-36 (requiring a much clearer expression of purpose than the creation of an express rule on a similar subject for a court to assume Congress intended to abrogate inherent judicial power).
About this case in particular, I will not repeat everything that I set out in the panel opinion. People who are interested can check for themselves about what the panel said and did. The case is intensely fact specific. The appellate decision creates no procedural rule. The panel created no procedural rule requiring pre-suit notice in FLSA cases: even notices from suing lawyers to lawyers to be sued in their individual capacity. Nor do I understand the District Court to have created such a hard-edged rule even for lawyers suing lawyers, although the absence of any notice was obviously an important consideration in the fee determination, particularly given all the circumstances (no looming statute of limitations, no concerns about a fleeing defendant, the local litigation customs among lawyers, the difficulty in determining what plaintiff claimed she was owed, the small settlement, and so on).
As the Preamble to the Rules Regulating the Florida Bar observes, a lawyer should demonstrate respect for other lawyers. Given that the defendants in this case were a law firm and lawyers sued individually by a plaintiff represented by a *891 lawyer from the same local area, the District Court in this case was attempting to superase its Bar and to protect civility and respect among the area’s lawyers. The District Judge specifically tied his decision to the local practices: “prior to filing suit in this local area, it is still reasonable to pick up the phone and call another lawyer so it won’t be necessary to file suit.” Other district judges in other areas of our Circuit may have different views based upon different local circumstances. Please recall that, even under Rule 11 (another kind of lawyer-conduct regulation), the district judge’s knowledge of the “local bar’s litigation practices” is considered an important reason for giving district judges much leeway on matters of sanctions. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990).
While I promised that I would not repeat everything I said in the panel opinion, I will end by repeating footnote 5 from the panel opinion: “We believe and defend the idea that maintaining a bar that promotes civility and collegiality is in the public interest and greatly advances judicial efficiency: better ‘to secure the just, speedy and inexpensive determination of every action and proceeding,’ as Rule 1 demands. For background, see Fed.R.Civ.P. 1.”