KELLY, Circuit Judge, dissenting.
 

 The abuse-of-discretion standard undoubtedly is deferential. But as the court notes, it "does not preclude an appellate court's correction of a district court's legal or factual error."
 
 Highmark
 
 ,
 
 572 U.S. at
 
 563 n.2,
 
 134 S.Ct. 1744
 
 . "A district court abuses its discretion if it fails to consider a relevant factor that should have been given significant weight" or "if it considers an improper or irrelevant factor."
 
 Qwest
 
 ,
 
 837 F.3d at 899
 
 . In my view, the district court both failed to consider a critical factor that should have been given significant weight, and, influenced by inapposite South Dakota case law, gave dispositive weight to an improper factor. Accordingly, I respectfully dissent.
 

 It is important to note that on remand, the district court was not deciding the issue of unjust enrichment on a blank slate. One of our conclusions in
 
 Qwest
 
 was that FC's traffic-pumping scheme, which allowed FC to receive from Qwest the "benefit" at issue here, was illegal and had always been so.
 

 Id.
 

 at 899-900
 
 (explaining that the billing practices under the Sancom-FC contract "were
 
 never
 
 legal" (emphasis added)). And it was not a defense to Qwest's unjust enrichment claim, we explained, that FC did not know this scheme was illegal at the time it implemented it with Sancom.
 

 Id.
 

 at 900
 
 . "[E]ven though FC was not itself acting illegally, its conduct might [nevertheless] be characterized as inequitable because it retained a benefit based on Sancom's tariff violation, which it partly caused."
 

 Id.
 

 Our view on this issue was one reason that compelled us to remand.
 

 But on remand, no consideration was given to our discussion of the
 
 illegality
 
 of FC's traffic-pumping scheme. The district court did not consider that FC earned a benefit-one that Qwest did not know of, much less consent to-by inducing Sancom to engage in billing practices that were "never legal." Failure to consider this factor not only runs afoul of
 
 Qwest
 
 , but it also runs afoul of South Dakota law and therefore constitutes an abuse of discretion.
 
 See
 

 Cooter
 
 ,
 
 496 U.S. at 405
 
 ,
 
 110 S.Ct. 2447
 
 ("A
 

 district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law ...."). Under South Dakota law, "[a]n enrichment is unjust if it 'lacks an adequate legal basis; [i.e.,] it results from a transaction that ... is
 
 nonconsensual
 
 .' "
 
 Dowling
 
 ,
 
 865 N.W.2d at 864
 
 (second alteration in original) (quoting Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (2011));
 
 see also
 

 Commercial Tr.
 
 ,
 
 535 N.W.2d at 858
 
 (" '[U]njust' enrichment implies illegal or inequitable behavior by the [defendant] in obtaining the benefits conferred by the [plaintiff]."). As we intimated in
 
 Qwest
 
 , and as
 
 Dowling
 
 makes clear, the district court should have considered-in a claim seeking equitable relief-that FC only obtained the benefits it received from Qwest through an illegal traffic-pumping scheme, a scheme that Qwest did not consent to, bargain for, or request.
 
 [3]
 
 In my view, retaining the benefits received from such a scheme amounts to unjust enrichment.
 

 In addition, the district court gave dispositive weight to an improper factor devised from inapposite South Dakota case law. The district court concluded that FC "earned" the benefit it received from Qwest because "FC provided conference calling services, 24-hour customer support, and access to a website in exchange for 2 cents per minute for calls placed to FC's conferencing bridges at Sancom." But critically, FC provided those services for the sole purpose of driving increased traffic to its conferencing bridges. Every minute of additional traffic simply resulted in more money for FC at Qwest's expense. It is difficult to see how FC equitably "earned" the benefit it received from Qwest by devising and implementing an illegal scheme that served no purpose except to "tak[e] advantage of legal uncertainty" for FC's benefit.
 
 Qwest
 
 ,
 
 837 F.3d at 899
 
 .
 

 The district court's reliance on this factor seems to stem from
 
 Parker v. Western Dakota Insurors, Inc.
 
 , the only case it discussed in its substantive analysis. The district court read this case as standing for the proposition that an unjust enrichment claim cannot lie where "the defendant paid for the benefit" it received. But in my view,
 
 Parker
 
 has no application here for at least two reasons. First, the plaintiff in that case did not confer the benefit on the defendant, and thus the plaintiff failed even to establish the critical first element of an unjust enrichment claim.
 
 Parker
 
 ,
 
 605 N.W.2d at
 
 187 ;
 
 see
 

 Qwest
 
 ,
 
 837 F.3d at 899
 
 (explaining that the first element in an unjust enrichment claim is proof that the "[plaintiff] conferred a benefit upon another"). Here, in contrast, it is undisputed that Qwest conferred the benefit on FC.
 
 Qwest
 
 ,
 
 837 F.3d at 899-900
 
 . But second, and more fundamentally,
 
 Parker
 
 found that there was no unjust enrichment because the defendant in that case had paid for the benefit in question through a legitimate, negotiated transaction with the party who conferred the benefit (First American).
 
 See
 

 Parker
 
 ,
 
 605 N.W.2d at 187
 
 ("First American conferred the benefit, which it had a right to do ...."). "[The defendant]
 
 legally
 
 acquired the [benefits]
 

 and paid valuable consideration [to First American] for them."
 
 Id.
 
 at 186 (emphasis added). In contrast, as described above, under
 
 Qwest
 
 , FC acquired the benefit it received from Qwest through billing practices that "were never legal."
 
 Qwest
 
 ,
 
 837 F.3d at 899
 
 .
 
 Parker
 
 , therefore, has limited application here.
 

 This case presents an unusual set of circumstances, particularly in light of the participation of a third party (Sancom), making analysis of Qwest's unjust enrichment claim rather challenging. But because I believe the district court abused its discretion in how it analyzed that claim, I respectfully dissent.
 

 The court emphasizes the statement in
 
 Qwest
 
 that "FC was not itself acting illegally," and suggests that such a recognition absolves FC from liability in this unjust enrichment claim.
 
 Supra
 
 , at 1206-07. But as we also recognized in
 
 Qwest
 
 , that a party might be acting lawfully is not dispositive on an equitable remedy.
 
 See
 

 Qwest
 
 ,
 
 837 F.3d at 899-900
 
 (explaining that whether FC's intent was benign would not be dispositive "because unjust enrichment is appropriate where the beneficiary gains a benefit inequitably, even if the beneficiary does not intend to deprive the benefactor of the benefit");
 
 see also
 

 Johnson
 
 ,
 
 779 N.W.2d at 417-18
 
 (concluding that a party was liable for unjust enrichment under South Dakota law even where it was not a "wrongdoer[ ]" and "had no intent to deprive" the plaintiff of his benefit).