**In re N.R. GUARANTEED RETIREMENT, INC., Debtor.**

No. 90 C 4748.

United States District Court, N.D. Illinois, E.D.

Nov. 13, 1990.

Nathan H. Lichtenstein, James P. Arndt, James T. Gardner, Timothy A. French, Chicago, for creditor.

Mark S. Lieberman, David A. Golin, Chicago, for debtor.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

This action involves two appeals by secured creditor Superior Bank FSB ("Superi-

or") from orders entered on July 3, 1990 [1] by Bankruptcy Judge Eugene Wedoff in this now-dismissed Chapter 11 case [2] that had been filed by debtor N.R. Guaranteed Retirement, Inc. ("N.R."): [3]

1. one denying in part Superior's motion to prohibit the use by N.R. of what may or may not be "cash collateral" in the terms defined by the bankruptcy statute (Sections 363(a) and 552(b)); [4] and

2. another denying Superior's motion to shift fees to N.R. under Bankruptcy Rule ("BR") 9011.

For the reasons stated in this memorandum opinion and order:

1. Superior's appeal of the claimed "cash collateral" order will not be dismissed as entirely moot but must be further briefed by the parties.

2. Judge Wedoff's order denying the imposition of sanctions under BR 9011 is affirmed.

### "Cash Collateral" Order

■■■ N.R.'s sole business asset when it filed in Chapter 11 was the beneficial interest in a land trust holding title to a commercial office building at 222 North Michigan Avenue, Chicago (the "Property"). N.R. had acquired the beneficial interest by transfer (not purchase) from the corporation of which N.R. is a wholly-owned subsidiary only two weeks before the Chapter 11 filing,[5] and that newly-acquired interest clearly had no intrinsic value at that time:

1. Since the end of 1984 the Property had been subject to an Instalment Agreement for Trustee's Deed calling for the Property to be conveyed to a contract purchaser for $10 million.[6] That of course put a corresponding cap on the asset value.

2. Meanwhile the Property was subject to two mortgages—a first mortgage to Firstmark Standard Life Assurance Company ("Firstmark") on which the indebtedness was more than $4 million at the time of filing, and a second mortgage to Superior on which over $7 million was owed at the time of filing.

Obviously the Property was under water in terms of its having a negative equity, and N.R. thus clearly qualified for the label of being "insolvent." Judge Bua's Order specifically upheld Judge Wedoff's determinations of the various values and their legal significance in every relevant respect. There is no question that N.R. filed its Chapter 11 petition to avoid the Property's going under the hammer of the impending mortgage foreclosure sale.[7]

On March 22 Judge Wedoff dismissed the Chapter 11 petition for having been filed without good faith. N.R. took an appeal from that order, and it obtained from Judge Wedoff an interim stay of the dismissal and a reinstatement of the auto-

---

1. Virtually all other relevant dates also fell during the current year. Accordingly no further year designations will be made in this opinion where the year 1990 is involved.

2. All references to provisions of the Bankruptcy Code will take the form "Section—," referring to the Title 11 numbering. Chapter 11 is of course only part of Title 11, occupying Sections 1101 through 1146.

3. Judge Wedoff's 27–page March 22 Amended Memorandum of Decision dismissing the Chapter 11 petition because it was not filed in "good faith" (in the bankruptcy sense) was affirmed by this Court's colleague Honorable Nicholas Bua in a 17–page September 24 memorandum order (the "Order"). Both judges' opinions confirmed that the good faith filing requirement is a judicial gloss on the statute, supporting dismissal under Section 1112(b) though not expressly mentioned there.

4. That issue is one of a number disputed by the parties. To the extent that this opinion expresses a view on that score, it should not be viewed as a definitive ruling because the matter has not been briefed by the litigants.

5. N.R. had been incorporated just four days before the beneficial interest in the land trust was assigned to it.

6. At the time of filing of the Chapter 11 petition, the outside date for closing the contract purchase was in 1990. Shortly after the filing, however, the Instalment Contract was amended to provide for closing of the $10 million sale on January 2, 1994.

7. Firstmark had begun foreclosure proceedings before the bankruptcy filing, only to have its efforts halted by the automatic stay triggered by that filing.

matic stay pending the appeal. In the meantime N.R. had, during the period from the inception of the bankruptcy case, accumulated nearly $1 million in rental and other receipts from the Property. And meanwhile the indebtedness to Superior, with no payments at all having been made on its mortgage since April 1, 1989, had swollen to nearly $8 million.

On May 7 Superior therefore moved for entry of an order:

1. prohibiting N.R.'s use of the accumulated funds, which were said to be "cash collateral" under Section 363(a);

2. requiring N.R. to segregate the cash collateral in an unencumbered interest-bearing escrow account for Superior's benefit;

3. directing N.R. to use the cash collateral to pay Superior interest from and after April 1, 1989; and

4. modifying the stay order to require N.R. (a) to account to the Bankruptcy Court for all income that it had received from the inception of the Chapter 11 proceedings and (b) if the dismissal were affirmed on appeal, to tender that entire amount to Superior to be held by it pending any further order of the Circuit Court of Cook County in the foreclosure action.

N.R. urges that the dismissal of the Chapter 11 case raises a subject matter jurisdictional bar to this Court's consideration of the cash collateral issue. But plainly the cash collateral order has effects that survive the dismissal—during the course of a bankruptcy case that should never have been filed by N.R.,[8] substantial funds were accumulated that secured creditor Superior could have pursued but for the pendency of the bankruptcy proceeding and its consequent automatic stay. To suggest that the parties' opposing claims to those funds do not present a "case or controversy" involves an obviously skewed use of that constitutional language.

Indeed, it is typical of N.R.'s posture during this case that it cites and quotes case-law authority that upon examination supports exactly the opposite conclusion from the one for which it contends. Here is what its opening brief on the mootness issue quotes from *Spacek v. Thomen (In re Universal Farming Industries)*, 873 F.2d 1334, 1335 (9th Cir.1989):[9]

In the bankruptcy context the determination of whether a case becomes moot on the dismissal of the bankruptcy hinges on the question of how closely the issue in the case is connected to the underlying bankruptcy. *See In re Omoto*, 85 B.R. 98, 100 (Bankr. 9th Cir.1988); *In re Dahlquist*, 751 F.2d 295, 298 (8th Cir. 1985). When the issue being litigated directly involves the debtor's reorganization, the case is mooted by the dismissal of the bankruptcy.... However, if the issue is ancillary to the bankruptcy, the dismissal of the petition does not necessarily cause the case to become moot.

And the analysis set out in *Dahlquist v. First National Bank in Sioux City, Iowa (In re Dahlquist)*, 751 F.2d 295, 298 (8th Cir.1985), one of the authorities cited and followed by the Ninth Circuit in *Thomen* and *Tabatabay*, is equally constructive here:

The principle which we find operative in these cases and others is this: while the dismissal of a bankruptcy action indicates discontinuation of the attempt to restructure the debtor's financial affairs under the auspices of a federal court, it does not necessarily moot all issues collateral or ancillary to the bankruptcy proceedings. Dismissal of the underlying bankruptcy proceeding may indicate that no case or controversy remains with respect to issues directly involving the re-

8. Whatever else may be said about the history of the dispute, that is certainly the lesson taught by the determination by Judges Wedoff and Bua that N.R. failed the "good faith" test.

9. That identical language also appears in the contemporaneous Ninth Circuit opinion in *Spacek v. Tabatabay (In re Universal Farming Industries)*, 873 F.2d 1332, 1333 (9th Cir.1989). And

any objective examination of the several different appeals that were dealt with in *Thomen* and *Tabatabay*, and of the different results reached by the Court of Appeals on the mootness issue as to the several appeals, plainly signals that the cash collateral issue in this case falls on the *non*-mootness side of the dividing line.

organization of the estate, but it does not necessarily indicate that no controversy exists with respect to any collateral or ancillary issues.[10]

Judged by those standards, the portion of the relief that is sought by Superior and that was rejected by Judge Wedoff that would require payment of interest on its indebtedness to Superior for the period after April 1, 1989 should *not* be labeled as moot. Just as "nature abhors a vacuum,"[11] so it must be viewed as impermissible for a debtor to bring a wholly groundless proceeding and then to use its mere pendency—to use the fact that time was necessarily taken to decide the issue of its groundlessness—to divert funds from its secured creditors and make that diversion a nonreviewable decision.

■ It is true that the state court in which the Property foreclosure is pending has entered an order that creates the prospect of an adjudication there dealing with the cash collateral funds, and that fact moots the last part of Superior's requested relief before Judge Wedoff (the turnover of funds to Superior to await a Circuit Court order in that respect). But the possibility that the parties might obtain such an adjudication does not suggest mootness as to *this* Court's ability to render such an adjudication under the operative legal standards.[12]

### BR 9011

■ BR 9011 simply mirrors Fed.R. Civ.P. ("Rule") 11, so that Rule 11 jurisprudence obviously dictates the principles that are applicable here. There may perhaps be one distinction: *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) mandates an "abuse-of-discretion" standard of review of district courts' Rule 11 decisions on appeal, while it has not yet been settled whether the same approach or a de novo standard is appropriate for the review of bankruptcy courts' decisions on appeal to district courts. This Court need not decide that question,[13] for the decision would be the same under either standard.

■ Essentially Superior contends for a one-to-one correlation between (1) the decision that good faith was lacking in the bankruptcy sense in the Chapter 11 filing and (2) the notion that subjective or objective good faith (or perhaps both) was (or were) therefore lacking in the same filing for BR 9011 purposes. But as to the subjective branch of BR 9011, the record that was made by the parties before the Bankruptcy Court and is now tendered to this Court on appeal does not support a determination that the Chapter 11 filing was "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."[14] And as for the objective branch of

10. [Footnote by this Court] Once again a contrast between (1) the matter that the Eighth Circuit had found to be moot in an earlier appeal in the *Dahlquist* case (737 F.2d 733 (8th Cir.1984)) after the dismissal of Chapter 11 proceedings and (2) the issue that it found not to be moot in the later appeal just cited and quoted in the text of this opinion teaches that Superior is right and N.R. is wrong on the mootness issue here.

11. Spinoza, *Ethics* Part I, Prop. XV, Note.

12. No opinion is expressed here as to whether the substantive decision is one of federal bankruptcy law or of the state law of mortgagee and mortgagor. Nor is any ruling suggested here either way as to whether any doctrine of abstention—perhaps even including a dismissal rather than a stay of proceedings here the now-active foreclosure action—should apply even though the doctrine of mootness does not.

13. On October 30 this Court rejected, by oral ruling, the effort by N.R.'s counsel to impose Rule 11 sanctions on Superior's counsel for their very advancement of a de novo standard contention on the current appeal. That ruling was not predicated on the irony of such a contention coming from N.R.'s lawyers in all events—a possibly grimy pot trying to call a kettle black—but rather because it was *certainly* not frivolous for Superior's lawyers to urge a de novo review, given both the difference in the respective intercourt relationships and the arguable thrust of some of the language in *Cooter & Gell* itself (see, e.g., 110 S.Ct. at 2460).

14. By definition the institution of any bankruptcy proceeding, with its consequent automatic stay, causes delay—that is the very essence of any invocation of the protection of the Bankruptcy Court. Neither the case law nor common sense allows for a per se rule under which the unsuccessful invocation of bankruptcy pro-

BR 9011, it is only necessary to read the lengthy analyses in Judge Wedoff's and Judge Bua's opinions to see that the use of the "single .asset new debtor syndrome" concept to support dismissal of N.R.'s Chapter 11 petition was not so clearly established by controlling authority as to render that petition frivolous in its inception.

In summary, this is not an appropriate case for the application of BR 9011. It is true that Superior sought to supplement the record before this Court by a showing of the highly problematic conduct of N.R.'s counsel in having siphoned off $139,000 in attorneys' fees during the ten-day period after the Chapter 11 dismissal in which N.R. had the right to appeal (but had not yet filed its notice of appeal).[15] But that is not the subject of the current appeal, and it does not mirror backward into an undercutting of the original objective good faith basis for filing the Chapter 11 petition.

### Conclusion

Superior's appeal on the cash collateral issues is not dismissed as moot insofar as it seeks to require N.R. to pay interest to Superior on the second mortgage for the period beginning April 1, 1989 out of the approximately $1 million in funds accumulated during and after the pendency of the Chapter 11 proceedings. This Court will discuss a briefing schedule on the remaining issues in that respect at the November 14 status hearing in this action. But as for Superior's appeal from Judge Wedoff's denial of BR 9011 sanctions, Judge Wedoff's order is affirmed.

tection would automatically trigger a sanction under BR 9011's subjective branch. And of course this Court is bound by the record made before Judge Wedoff, with the issue being framed as one of law and not one involving evidentiary grist for the judicial mill.

**15.** Judge Wedoff labeled N.R.'s claim of having the right to do that as "intolerable" (Sept. 21 Tr. 2, 4) and as "the most extraordinarily sharp practice that I've seen in a long time" (Aug. 31 Tr. 6), and this Court sees no reason to differ with his views on *that* subject either. That $139,000 has now been repaid in conformity with Judge Wedoff's order to do so, but that repayment would not (as N.R.'s counsel now suggests) sanitize their original conduct in taking the money.