615 So.2d 1060 (1993)
FIRST AMERICAN BANK & TRUST
v.
FIRST GUARANTY BANK.
No. CA 92 0127.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
*1061 Arthur C. Reuter, Jr., New Orleans, for plaintiff-appellant.
Alton B. Lewis, Hammond, for defendant-appellee.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
EDWARDS, Judge.
The issue in this sanctions case is whether the pursuit of a case found to be meritless by the trial court and failure to submit persuasive evidence at trial violate Code of Civil Procedure article 863 B and D. The trial court awarded sanctions. We find that the conduct did not violate article 863 and reverse the judgment of the trial court.
First American Bank & Trust (American) filed suit against First Guaranty Bank (Guaranty) for the return of funds paid to or pledged for the benefit of Guaranty by the Bank of St. Charles (St. Charles) under a data processing services agreement between Guaranty and St. Charles dated August 11, 1989. American alleged that it had assumed all deposit liabilities and acquired the assets of St. Charles, including the funds in question.
The disputed funds consist of a $40,000 conversion fee paid to Guaranty for converting the St. Charles system to a data processing system run by Guaranty and a $158,000 early termination fee. The $158,000 early termination fee was comprised of a $50,000 flat fee and a fee of $108,000, representing six months of billing at $18,000 a month.
American alleged that work undertaken to convert the St. Charles system as required by the August 11th agreement was suspended at the request of St. Charles on September 18, 1989 and never reinstated. St. Charles was closed on November 2, 1989 by the Office of Financial Institutions. As of the same date, St. Charles terminated the agreement with Guaranty. American asserted that any work done between August and September 18 was minimal and did not support a conversion fee of $40,000 and a termination fee of $158,000. American claimed that (1) the fees were stipulated damages that were so unreasonable as to be contrary to public policy; (2) St. Charles was released from the stipulated damages because the foreclosure was a valid excuse not to perform; and (3) Guaranty knew or should have known of the instability of St. Charles and, therefore, contracted in bad faith. The petition was signed by the attorney for American and verified by the president of American.
Guaranty answered and argued that the funds belonged to Guaranty by operation of the contract.
After taking depositions from William Sullivan, the data processing manager for Citicorp Information Resources; Michael Landry, comptroller for Guaranty; and Rick Jensen, Guaranty's executive vice-president and chief operating officer; American filed an amended petition. A new demand in the amended petition concerned the $54,520 deposited under the August 11th agreement for payments for equipment leased by St. Charles. American alleged that only two payments, totaling $19,684, were made before the agreement was terminated and the balance was owed to American. American also added a claim for unjust enrichment.
Guaranty answered the amended petition and asserted that Guaranty offered to release the balance of the lease payments deposit, if American would agree to a hold harmless and indemnity agreement for the other lease payments. A reconventional demand for damages caused by American's failure to allow the pledged funds to be released to Guaranty was included in the answer. Guaranty asserted that this failure to release constituted an illegal seizure by American. Guaranty also prayed for damages for frivolous suit. The argument was made that after American took the depositions, it was aware that the agreement was an arm's length transaction negotiated in good faith and that the fees were customary in the industry and not unreasonable.
*1062 American answered the reconventional demand and denied that any illegal seizure took place and that the suit was frivolous.
In a pre-trial memorandum submitted by American, it argued that Guaranty incurred little or no real expense in connection with the aborted conversion from August until September 18th. American reiterated its claim that Guaranty was not entitled to the funds because (1) the stipulated damages were manifestly unreasonable, (2) the foreclosure was a valid excuse not to perform, (3) Guaranty knew or should have known that St. Charles would fail and, therefore, contracted in bad faith, and (4) Guaranty would be unjustly enriched if allowed to keep all of the funds in dispute.
From the depositions, it was established that (1) Guaranty was aware that St. Charles was undercapitalized based on federal standards, as was Guaranty; (2) the conversion was one-third complete when operations were suspended; (3) Guaranty, in working on the conversion, utilized programming hours sold to Guaranty for a flat monthly fee by Citicorp Information Resources (Citicorp) under an agreement in place before the agreement with St. Charles; (4) Guaranty lost an opportunity to pursue a possible customer because of the agreement with St. Charles; (5) Guaranty did not hire any new personnel for the conversion process, but did utilize its own employees and Citicorp's; (6) one printer was bought for use after the conversion, when the system was running; and (7) according to Mr. Sullivan, the fees charged for conversion and early termination were standard in the area.
At trial, both parties stipulated that Guaranty would return the balance of the lease payments deposit when American provided Guaranty with a hold harmless agreement. Plaintiff's presentation at trial consisted of several exhibits, including the August 11 agreement and letters suspending and terminating the agreement, and the testimony of Mr. Landry, Guaranty's comptroller. After plaintiff's presentation, the defendant moved for a directed verdict. Plaintiff argued against the motion and reiterated the arguments made in the pleadings. The trial court took the motion under advisement because it wanted to review the documents submitted by plaintiff before ruling.
The trial court found in favor of Guaranty and dismissed plaintiff's suit. Guaranty's right to file a rule for sanctions was reserved. Plaintiff filed a motion for a new trial because of the trial court's failure to award plaintiff the stipulated lease payments deposit in the judgment. An amended judgment was signed awarding the stipulated deposit. The judgment was not appealed.
Guaranty filed a rule to show cause why damages should not be awarded as sanctions for a frivolous action. A hearing was held. The trial court found that "[American] instituted this action hoping to recoup some funds previously paid under a contractual agreement by a former, failed bank which [American] had purchased through the FDIC. No real foundation for... plaintiff's argument was made at trial, and its claims were rejected ... by the [c]ourt. Under these circumstances, and where [American] should have been aware of the flimsiness of its claim prior to the case proceeding onto trial, but yet apparently deciding to take a flyer with the case anyway in hopes to recoup some money, this [c]ourt cannot conclude that Guaranty should be compelled to pay for the services of its attorney...." Monetary sanctions in the amount of $9,200, representing Guaranty's attorneys' fees, were awarded to Guaranty.
American appealed and argued that it had not violated Code of Civil Procedure article 863, and therefore, the award of sanctions was in error. American believed that it had presented sufficient evidence and made competent legal argument under the facts.
Guaranty answered the appeal, asked for increased attorneys' fees and for damages for frivolous appeal.
Code of Civil Procedure article 863 B and D provides:
B. Pleadings need not be verified or accompanied by affidavit or certificate, *1063 except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
Article 863 is derived from rule 11 of the Federal Rules of Procedure. Therefore, the federal decisions discussing rule 11 can provide guidance in interpreting our procedural article 863. Both of these procedural rules "apply to the signing of pleadings, motions and other papers imposing upon attorneys and litigants affirmative duties as of the date a document is signed. The district court must determine if the individual, who has certified the document purported to be violative, has complied with those affirmative duties." Loyola v. A Touch of Class Transp. Serv., 580 So.2d 506, 509 (La.App. 4th Cir.1991).
The focus of article 863 B is whether the attorney or litigant met the obligation at the time of the signing of the objectionable document. The obligation of the signer is to read the pleading and to make a reasonable inquiry to determine if the pleading is "well grounded in fact" and "is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." LSA-C.C.Pro. art. 863 B. The mere fact that a legal argument or theory is creative or novel is not a basis for sanctions. If the pleading is factually grounded and the argument is warranted by existing law or a good faith argument for change, it is not frivolous. See Loyola, 580 So.2d at 510. The signing of the pleading also constitutes a certification "that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." LSA-C.C.Pro. art. 863 B.
As with rule 11, nothing in the language of article 863 "empowers the district court to impose sanctions on lawyers simply because a particular argument or ground for relief contained in a non-frivolous motion is found to be unjustified." Loyola, 580 So.2d at 510. Nor does article 863 D impose sanctions simply for bringing a lawsuit found to be meritless, without a finding that an attorney or the litigant "signed a paper in violation of the [article]." See National Association of Government Employees v. National Federation of Federal Employees, 844 F.2d 216, 222 (5th Cir.1988). Similarly, the parties' disagreement over the correct resolution of a matter in litigation also cannot serve as a basis for 863 sanctions. Rule 11 and article 863 are intended to be used only in exceptional circumstances. Loyola, 580 So.2d at 510. See generally Mengis, Professional Responsibility, 52 La.L.Rev. 721, 727-28 (1992).
The failure to prevail does not of itself trigger a sanction. Loyola, 580 So.2d at 510. The failure of a litigant to prove his case is different from the litigant's failure to meet the obligation of Code of Civil Procedure article 863. A violation of article 863 results in some type of sanction. The usual consequences of the failure to meet the party's burden of proof is the dismissal of the suit or the loss of the case.
In these article 863 cases, the standard of review by the appellate court, often referred to as the abuse of discretion standard, is nothing more or less than the manifestly or clearly erroneous criteria used by *1064 this court in reviewing a trial court's factual findings. Loyola, 580 So.2d at 509. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).
The plaintiff apparently relied on the agreement provisions, the actual amount of the conversion and termination fees, the incomplete conversion process, the short time span between the agreement and the suspension of the conversion, and Guaranty's knowledge that St. Charles was financially unstable to serve as the proof of its claims that the stipulated damages were unreasonable on their face, that Guaranty negotiated in bad faith and should not be allowed to profit from the aborted agreement, and that Guaranty would be unjustly enriched if allowed to keep the disputed fees.
In the trial court's reasons for judgment, the trial court did not discuss whether American signed any pleading without complying with article 863 B or whether American failed to make the required reasonable inquiry before signing. The trial court did not find that the suit was filed to delay or to harass. The court did say that the sanctions were imposed because the plaintiff pursued a flimsy case that the court found to be meritless and failed to present persuasive evidence. We understand the trial court's frustration with what appears to be a poor presentation at trial by plaintiff, but article 863 does not impose sanctions for poor presentations or failure to prove a case.
Sanctions are imposed for failure to meet the obligations of article 863 B. The record here does not support a finding that the suit was filed for an improper purpose, that the plaintiff or the attorney failed to make a reasonable inquiry concerning the facts, that the facts were not well grounded, or that American failed to make a good faith argument of their view of the law. The parties appear to have agreed on the significant facts, but disagreed as to their interpretation and the correct resolution of the litigated matter. The plaintiff was successful on its request for return of the lease payments deposit.
Therefore, because we find that no certification was made in violation of Code of Civil Procedure article 863 B, we hold that the trial court abused its discretion in awarding sanctions and reverse the judgment. The costs of the appeal are assessed to Guaranty.
REVERSED AND RENDERED.