996 F.2d 1212
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Philemon K. PLATT, d/b/a Pamlico Air Service, Plaintiff-Appellant,
v.
Judith IHLE; Linda Ihle; Federal Aviation Administration;
Reynolds Bishop, individually and as employee of Federal
Aviation Administration; Edward F. Glavin, individually and
as employee of Federal Aviation Administration; Dennis
Scarfeo, individually and as an employee of Federal Aviation
Administration, Defendants-Appellees.
 No. 91-2258.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 2, 1992.
Decided: June 22, 1993.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City. Terrence W. Boyle, District Judge. (CA-91-12-CIV-2-BO)
 Argued: Charles Barry Zuravin, Columbia, Maryland, for Appellant. Steven Ellsworth Lacy, New Bern, North Carolina; Linda Kaye Teal, Assistant United States Attorney, Raleigh, North Carolina, for Appellees.
 On Brief: Margaret Person Currin, United States Attorney, Raleigh, North Carolina, for Appellees.
 E.D.N.C.
 AFFIRMED.
 Before WIDENER and LUTTIG, Circuit Judges, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Philemon K. Platt appeals from an order of the United States District Court for the Eastern District of North Carolina dismissing his action brought under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and imposing sanctions in favor of two defendants pursuant to Fed. R. Civ. P. 11. We agree that Platt has failed to state a claim under the Bivens doctrine, and we find that the district court did not abuse its discretion in imposing costs and attorney's fees as to the claims against the private defendants, the Ihles. Accordingly, we affirm.
 
 
 2
 The relevant facts alleged in Platt's amended complaint, which we assume as true for present purposes, are as follows. Appellant Platt is a professional airman who, prior to the events giving rise to this suit, held several types of pilot's licenses, including a commercial pilot's license and an air taxi/charter operator's license. In 1988 Platt moved to Ocracoke, North Carolina, where he intended to pursue his career in the aviation field. In addition to forming his own air taxi business in Ocracoke, in October, 1989, Platt accepted a position as chief pilot and check airman with Air East, a small airline operating out of New Bern, North Carolina. Air East had been having trouble obtaining certain Federal Aviation Administration (FAA) approvals necessary to operate as an airline, and Platt was hired in part for his expertise in obtaining the needed approvals.
 
 
 3
 However, when the owners of Air East informed Reynold Bishop, an FAA employee based in Winston-Salem, North Carolina, that they had hired Platt, Bishop gave them the impression that Platt was not a competent airman and that they would be unable to conduct their business with him on board. Bishop informed them that "he and the F.A.A. would never give Phil Platt the necessary authorization needed by a chief pilot or check airman," that Platt"had given the Baltimore office [of the FAA] a hard time,"[1] and that Platt was the subject of an ongoing FAA investigation. Allegedly as a result of Bishop's negative statements, Air East fired Platt the night before he was to begin work.
 
 
 4
 Platt encountered further difficulties with the FAA after the Air East episode, this time in connection with his activities as a pilot and air taxi operator. The airport at Ocracoke is owned by the United States Park Service and does not allow commercial aviation operations to be based on that airfield. Though Platt disputes the scope of the prohibition on commercial operations, he apparently agrees that traditional charter flights may not be conducted from the Ocracoke airport.[2] In any event, the FAA, believing that Platt had violated federal regulations by conducting charter flights to and from Ocracoke airport, took steps to revoke Platt's pilot's licenses on February 5, 1991. The FAA's order revoking those licenses presently is on appeal before the National Transportation Safety Board (NTSB).
 
 
 5
 The bulk of Platt's claims arise out of the events leading to the revocation of his licenses. First, though the record does not reveal the exact date, at some point during 1989 Platt flew an official of Hyde County, North Carolina, from Swan Corner, North Carolina, to Ocracoke. That flight apparently was arranged by Linda Ihle, a private citizen and resident of Ocracoke. Upon completion of the flight, Linda[3] offered to pay Platt for his services. Platt initially refused to accept the payment because he had a contractual arrangement with Hyde County whereby he would lease his airplanes to county officials at county expense when needed for official travel. Ultimately, however, Platt accepted Linda's check in compensation for transporting the official. Sometime thereafter, Linda Ihle filed a report with the FAA recounting her arrangement of that flight and her payment to Platt.
 
 
 6
 The second incident leading to the revocation of Platt's licenses involved Linda Ihle's mother, Judith. On May 10, 1989, Platt flew Mrs. Elizabeth O. Howard from Ocracoke to New Bern and back in exchange for an unspecified amount of money. During June, 1989, Judith apparently learned of this flight and so informed FAA officials Edward F. Glavin and Dennis Scarfeo. Glavin then prepared a statement or "interview" report to be signed by Mrs. Howard recounting her paid flight with Platt. Judith Ihle then took this statement to Mrs. Howard, who signed it. On the strength of the reports regarding these flights, the FAA moved to revoke Platt's licenses.
 
 
 7
 On May 8, 1991, Platt filed a pro se complaint in the district court against Judith and Linda Ihle and FAA employees Bishop, Glavin, and Scarfeo[4] claiming, on various legal theories including state tort law and 42 U.S.C. § 1983, that the defendants had conspired to fabricate FAA charges against him in an effort to damage his reputation and close his air taxi business. On May 3, 1991, the court granted Judith and Linda Ihle's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On May 10, 1991, the Ihles moved the court for Fed. R. Civ. P. 11 sanctions against Platt. Before the court ruled on the sanctions motion and before the other defendants responded to the complaint, Platt, now through counsel, filed an amended complaint against all of the defendants, including the Ihles. This complaint essentially repeated the factual allegations of the original complaint but added claims under Bivens, supra, against all defendants. As the Ihles had already been dismissed from the case, Platt sought to have them reinstated by naming them in the amended complaint and filing a motion for reconsideration of their prior dismissal. The government, acting on behalf of the FAA defendants, moved to dismiss the complaint as against Bishop, Glavin, and Scarfeo.
 
 
 8
 The district court, by order dated September 17, 1991, granted the motion to dismiss defendants Bishop, Glavin, and Scarfeo, denied Platt's motion to reconsider the Ihles' dismissal, and awarded Rule 11 sanctions in favor of the Ihles. As to the claims against Bishop, Glavin, and Scarfeo, the court held that Platt had failed to allege any specific facts which would support a finding that they had violated Platt's constitutional rights or that they would not be shielded from liability by the doctrine of qualified immunity. As to the Ihles the court held that the amended complaint failed to allege with sufficient specificity that they had acted in concert with the FAA defendants so that, even if a Bivens claim may lie against private individuals in narrow circumstances, Platt had failed to state a claim against them. Further, the court found the claims against the Ihles so insubstantial as to be frivolous and directed Platt to pay the Ihles' reasonable expenses incurred in defending the suit, including reasonable attorney's fees. Finally, having disposed of the only remaining federal claim in the suit, the court declined to exercise pendent jurisdiction over Platt's state law claims.[5]
 
 
 9
 Being in substantial agreement with the reasoning of the district court, we shall elaborate on its opinion only briefly, largely to take note of two recent decisions of the United States Supreme Court that only bolster the district court's conclusions. For purposes of analysis Platt's Bivens claims can be divided into three categories: 1) the claims against the Ihles for their participation in gathering information regarding Platt's allegedly illegal commercial flights; 2) the claim against FAA employee Bishop for his alleged defamatory statements to Air East; and 3) the claims against Bishop, Glavin, and Scarfeo for their alleged fabrication of FAA violations leading to the revocation of Platt's pilot's licenses. We address each category in turn.
 
 
 10
 We need not address the question of whether Bivens type action may have maintained against private persons, for we are of opinion that, even if Bivens actions are maintainable against private individuals under some circumstances, Platt has failed to allege with even minimal specificity any concerted action on the part of the Ihles with the FAA in this case. The amended complaint does not allege any specific facts which, if proved, would establish that the Ihles conspired with the FAA to violate Platt's due process rights. Without its conclusory pleading and unnecessary adjectives and adverbs, Platt's complaint alleges only that the Ihles reported the facts of two incidents, Platt's compensated flights of a Hyde County official and of Mrs. Howard, the occurrence of which Platt does not dispute. As we have described, see note 2, supra, Platt disputes only the legal significance of these reports, a matter which, as we shall see, is for resolution by the proper federal agencies. His quarrel with the Ihles, then, is only that they brought the occurrence of those flights to the attention of the FAA. We are of opinion that a private citizen's relation of truthful information to a federal regulatory agency does not give rise to a claim for damages against that citizen even though that agency's use of that factual information may be legally insupportable or even tortious.
 
 
 11
 Accordingly, we concur with the district court's denial of Platt's motion seeking reinstatement of the Ihles as defendants. In light of our agreement with the court's disposition of the claims against the Ihles, we cannot say that the court abused its discretion in awarding costs and attorney's fees to the Ihles under Rule 11. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 399-405 (1990).
 
 
 12
 As for Platt's second type of claim, that FAA employee Bishop's alleged defamatory[6] statements to Platt's prospective employer, Air East, led to his termination, we are of opinion that the recent decision in Siegert v. Gilley, 59 U.S.L.W. 4465 (U.S. 1991), largely removes such claims from the realm of injuries redressable through a Bivens cause of action. Siegert was a clinical psychologist who had been employed by the federal government at St. Elizabeths Hospital in Washington, D.C. He resigned from that post to avoid imminent termination on grounds of alleged excessive absences and general poor performance. He then began working as a civilian clinical psychologist at the United States Army Hospital in Bremerhaven, West Germany. The government requires that such personnel be"credentialed," and as part of the credentialing process Siegert requested that his previous supervisor at St. Elizabeths Hospital, one Gilley, provide the Army with information on his job performance and privileges while a member of their staff. In response Gilley provided the Army with an exceedingly negative report of Siegert's performance and qualifications, causing Siegert ultimately to lose his position with the Army.
 
 
 13
 Siegert sued Gilley for damages under Bivens, claiming that the report was false and defamatory and thus that Gilley's actions deprived Siegert of his "liberty" interest in his job without due process of law in violation of the Fifth Amendment to the United States Constitution. The Court rejected this contention and held that Siegert had "failed to satisfy the first inquiry in the examination of such a [Bivens ] claim; he failed to allege the violation of a clearly established constitutional right." Siegert, 59 U.S.L.W. at 4467. According to the Court, damage to one's reputation due to the defamatory statements of a federal official does not constitute a deprivation of "liberty" within the meaning of the Fifth Amendment even if that damage to reputation leads to more concrete economic harm. To quote the Court:
 
 
 14
 Defamation, by itself, is a tort actionable under the laws of most States, but it is not a constitutional deprivation.
 
 
 15
 ...
 
 
 16
 The statements contained in the letter would undoubtedly damage the reputation of one in [Siegert's] position, and impair his future employment prospects. But the plaintiff in Paul v. Davis [, 424 U.S. 693 (1976) ] similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but is not recoverable in a Bivens action.
 
 
 17
 Siegert, 59 U.S.L.W. at 4467-68. We are of opinion that Platt's claim against Bishop falls squarely within the holding in Siegert, and thus we affirm the district court's dismissal of the claim related to his statements to Air East.
 
 
 18
 Finally we address the remainder of Platt's claims against the FAA employee defendants, all of which relate to the allegedly wrongful revocation of his pilot's licenses. The regulations of the FAA and NTSB set out a comprehensive procedure whereby a pilot having suffered the revocation of his licenses may challenge the propriety of the revocation before those agencies and, ultimately, before the federal courts. See generally 49 U.S.C. App. §§ 1429, 1486; 14 C.F.R. Part 13 (1992) (FAA proceedings); 49 C.F.R. Part 821 (NTSB proceedings). As we have noted, Platt indeed has availed himself of these procedures and at the time of filing the complaint in this case had an administrative appeal pending before the NTSB.
 
 
 19
 These statutory and administrative procedures ultimately will determine whether the FAA in general, and Bishop, Glavin, and Scarfeo in particular, acted lawfully in revoking Platt's licenses. Certainly those highly specialized agencies are uniquely qualified to deal with what may prove to be complex issues of federal aviation law. In Schweiker v. Chilicky, 487 U.S. 412 (1988), the Court recently made it clear that the existence of such a comprehensive remedial scheme precludes an injured person from bringing a Bivens damages action against the alleged wrongdoers. We think the FAA and NTSB procedures noted above are precisely the type of remedial scheme that obviates the need for the Bivens cause of action in light of Chilicky, and accordingly we affirm the district court's dismissal of all of Platt's claims in this case growing out of the revocation of his licenses.
 
 
 20
 For the foregoing reasons, the judgment of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Between 1977 and 1988 Platt owned and operated an air charter business in Easton, Maryland. During those years Platt experienced a turbulent relationship with the Baltimore office of the FAA. That poor relationship culminated in Platt's filing suit against the FAA in federal court in 1981. The lawsuit was settled favorably to Platt, a fact which, he alleges, caused FAA officials to bear a grudge against him from that point forward
 
 
 [2]
 As we describe more fully below, the FAA revoked Platt's licenses on the grounds that he had violated the prohibition on commercial flights out of Ocracoke by flying persons from Ocracoke to the mainland in exchange for money. Platt does not dispute that those flights occurred or that he was compensated for them. Rather, his argument appears to be that the flights were not prohibited commercial flights because they were not "charter" flights, meaning that his passengers did not pay him for performing the service of flying them in his airplane to their destinations. He instead characterizes these flights as rentals of the airplane itself, combined with his gratuitous service as pilot. On this distinction he bases his claims against the Ihles
 On its face this characterization may seem to be nothing more than a ruse to evade the restrictions on commercial flights from Ocracoke airport. However, we need not delve into the merits of this distinction under the complex body of aviation law, as our disposition of this Bivens action for damages does not depend on the legality of the flights in question or the propriety of the revocation of Platt's licenses. We instead leave these matters to the expertise of the FAA and the NTSB.
 
 
 [3]
 For purposes of clarity, we refer to the private defendants in this case, the Ihles, by their first names
 
 
 [4]
 The original complaint also named the FAA itself and the FAA employees in their official capacities. Platt later consented to the dismissal of these claims
 
 
 [5]
 Platt does not appeal the dismissal of the state claims or of his other federal claims; thus, the only issues remaining in the case for our consideration are the Bivens claims against the FAA employees in their individual capacities and the Ihles, as well as the issue of the sanctions award against Platt
 
 
 [6]
 At oral argument Platt's counsel insisted that Bishop's statements were not defamatory, presumably in an attempt to avoid the holding in the Siegert case, as we describe below. We think the clear implication of Bishop's words, however, at least was that Platt was incompetent and thus would be a detriment to Air East's operations. Thus the only fair characterization of this claim is one for defamation