36 F.3d 1117
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
VALLEY RECREATION PRODUCTS INC., Plaintiff-Appellant,
and
John K. McCulloch, Sanctioned-Party/Appellant,
v.
ARACHNID, INC., Defendant-Appellee.
 Nos. 93-1543, 94-1101.
 United States Court of Appeals, Federal Circuit.
 Sept. 30, 1994.
 
 Before ARCHER, Chief Judge, RADER, and SCHALL, Circuit Judges.
 DECISION
 RADER, Circuit Judge.
 
 
 1
 The United States District Court for the Eastern District of Michigan held, on summary judgment, that Arachnid, Inc.'s electronic dart games do not infringe Valley Recreation Products, Inc.'s U.S. Patent No. 4,567,461 (the '461 patent). Valley Recreation Prods., Inc. v. Arachnid, Inc., No. 92-CIV-10145-BC (E.D.Mich. July 19, 1993). The trial court also imposed sanctions on Valley and Valley's counsel under Federal Rule of Civil Procedure 11. Valley Recreation Prods., Inc. v. Arachnid, Inc., No. 92-CIV-10145-BC (E.D.Mich. Nov. 5, 1993). Because no reasonable juror could have found either literal infringement or infringement under the doctrine of equivalents, this court affirms summary judgment. Because the district court abused its discretion in awarding sanctions under Fed.R.Civ.P. 11, however, this court reverses the award of sanctions.
 
 BACKGROUND
 
 2
 Valley and Arachnid have litigated for years over their dart game products. Arachnid earlier sued Valley for infringement of a different patent. During that litigation, Valley learned of the '461 patent. Valley purchased the '461 patent from its co-inventor and owner, Mr. Robert Honekman, for $10,000. After unsuccessfully attempting to license the '461 patent to Arachnid, Valley sued Arachnid for infringement.
 
 
 3
 The '461 patent claims, in means-plus-function language, a scorer for electronic dart games. Claim 1, one of two independent claims in the patent, recites in pertinent part:
 
 
 4
 An electronic dart game scorer comprising in combination ... score entry means connected to said computer means for updating said beginning score to derive successive intermediate game scores on said selected display means....
 
 
 5
 The '461 specification describes an electronic scorer into which a player manually enters scores, round by round, through either a numeric keypad or a voice recognition system. According to the specification, a player observes darts on a traditional cork board and enters a single round score, which is either added to or subtracted from (depending upon the game selected) a previous score by the electronic scorer.
 
 
 6
 Arachnid's accused device is an electronic dart game which automatically records the score when the darts hit the board. When the plastic-tipped darts hit the board, that landing activates a switch. The switch, in turn, delivers an electronic signal to the scoring unit. Players thus need not mentally compute or manually record scores during play. Arachnid's accused device can keep score automatically for a variety of different dart games.
 
 
 7
 Arachnid moved for a summary judgment of non-infringement. For purposes of this motion, Valley agreed to be bound by the court's decision on claim 1. The district court thus faced the question on summary judgment of whether a reasonable juror could find that the automatic scoring unit of the Arachnid device infringes claim 1, including the recited "score entry means" of the '461 patent. All the score entry structures described in the '461 patent require the user to manually (by finger or voice) enter the scores.
 
 
 8
 Arachnid presented testimony that the '461 patent's score entry means covers only the keypad and voice systems disclosed in the specification. Arachnid's expert stated further that the electronic dart game scorer disclosed by the '461 patent requires human participation in the scoring process. Thus Arachnid contended that the '461 patent does not cover automatic scorers like the Arachnid device.
 
 
 9
 To avoid summary judgment, Valley presented expert witness testimony that the score entry means of the '461 patent was not "limited to structures for manual entry of scores" and could encompass the Arachnid games. Valley's expert further argued that the claimed score entry means encompasses a computer or microprocessor, not merely a keypad or voice recognition system. Therefore, Valley contended, the score entry means embraces more than the disclosed keypad or voice systems.
 
 
 10
 The district court granted Arachnid's motion. The trial court later granted Arachnid's motion for sanctions pursuant to Rule 11, stating:
 
 
 11
 The Court draws no firm conclusions as [to] the plaintiff's motive for bringing this suit except that it had to be for some reason other than a legitimate expectation of possible success on the merits.
 
 
 12
 It is the unqualified opinion of the Court that neither the plaintiff's corporate officers who authorized this suit nor the plaintiff's attorneys who signed the complaint could reasonably have concluded that the complaint alleging infringement of the patent in suit was well founded in fact nor that it was warranted by existing law.
 
 
 13
 Valley appealed both rulings to this court.
 
 DISCUSSION
 
 14
 To prevail on its motion, Arachnid must show the absence of any genuine issues of material fact regarding infringement and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine dispute requires sufficient evidence to enable a reasonable fact finder to decide the issue in favor of the non-movant. Opryland USA Inc. v. Great Am. Music Show, Inc., 970 F.2d 847, 850, 23 USPQ2d 1471, 1472 (Fed.Cir.1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In assessing the motion, the district court views the evidence in a light favorable to the non-movant and construes all justifiable inferences in the non-movant's favor. Id. This court reviews the district court's summary judgment de novo. KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1449, 27 USPQ2d 1297, 1301 (Fed.Cir.1993).
 
 
 15
 The test for patent infringement has two parts: first, the claims must be properly interpreted to determine their scope; second, the properly interpreted claims must be applied to the accused device. Claims may be infringed either literally or under the doctrine of equivalents. The parties do not dispute how the accused device works in this case. This case turns on the proper construction of claim 1 of the '461 patent and, in particular, its means-plus-function limitation, the "score entry means." Means-plus-function limitations are interpreted in accordance with 35 U.S.C. Sec. 112 (1988). Valmont Indus., Inc. v. Reinke Mfg. Co., 983 F.2d 1039, 1041, 25 USPQ2d 1451, 1453 (Fed.Cir.1993).
 
 
 16
 Section 112, p 6 restricts the literal language of a means-plus-function limitation. Id. at 1042. For such a limitation to read on an accused device, it must "employ means identical to or the equivalent of the structures, material, or acts described in the patent specification." Id. Applying this standard to this case, the specification describes only keypad and voice-activated entry means as the structure defining and limiting the scoring means of the '461 patent. As the district court correctly noted, the score entry means of the '461 patent requires human intervention. The '461 specification does not describe anything similar to the automatic scoring means of the Arachnid device. The district court therefore correctly determined that the Arachnid device did not literally infringe because the Arachnid device lacks the scoring structure of claim 1 as properly interpreted under 35 U.S.C. Sec. 112, p 6.
 
 
 17
 The doctrine of equivalents, as this court has often noted, prevents a copyist from evading patent claims through insubstantial changes. Id. at 1043. The doctrine "is not designed ... to permit a claim expansion that would encompass more than an insubstantial change." Id. at 1043 n. 1 (quoting Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 935, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (en banc), cert. denied, 485 U.S. 961 (1988), cert. denied, 485 U.S. 1009 (1988)).
 
 
 18
 The '461 patent requires human computation and entry of scores in all of its disclosed embodiments. The Arachnid games require no human computation or entry, but automatically score the games based on the dart landings. Arachnid's game is far more than a mere insubstantial change from the claimed invention. The score entering structure in the Arachnid device works in a substantially different way from the score entry means recited in claim 1, as properly construed in light of the '461 patent specification. See Graver Tank Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 85 USPQ 338 (1950). Therefore, Arachnid did not infringe under the doctrine of equivalents either.
 
 
 19
 Upon de novo review of the record, this court affirms the district court's grant of summary judgment. In sum, the advance from human scorekeeping, as described in the '461 specification, to the automated scoring of the Arachnid games, precludes a finding of infringement. Valley did not show a genuine issue of material fact.
 
 Rule 11 Sanctions
 
 20
 Rule 11 authorizes imposition of sanctions on an attorney or party who signs a pleading without a
 
 
 21
 belief, formed after an inquiry reasonable under the circumstances,--
 
 
 22
 (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
 
 
 23
 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
 
 
 24
 (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
 
 
 25
 (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
 
 
 26
 Fed.R.Civ.P. 11(b).
 
 
 27
 In determining whether Rule 11 sanctions are appropriate, a district court must apply a standard of reasonableness under the circumstances to the attorneys and parties who sign a pleading. See Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 551 (1991). In reviewing all aspects of a district court's decision to impose sanctions under Rule 11, this court applies an abuse of discretion standard. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).
 
 
 28
 This case turned on the legal question of claim interpretation. Valley had one interpretation, Arachnid had another with which we agree. It is difficult to discern what claim interpretation the district court used from its short oral opinion. From our review of the record, however, we do not think that Valley's claim interpretation was so baseless as to warrant sanctions.
 
 
 29
 Several factors in this record suggest that Valley did not file a complaint without a reasonable belief that it was well-grounded. In the first place, Valley did present expert evidence in support of its position. In addition, Arachnid itself incurred legal costs for over a year before filing its summary judgment motion. These factors suggest that the allegations in Valley's complaint were not wholly unfounded. Moreover, the record indicates that other automatic electronic dart game manufacturers have taken licenses under the '461 patent, further suggesting that Valley could well have formed a reasonable belief that its pleading was warranted and well grounded.
 
 
 30
 Imposing sanctions in this case would serve only to chill future enforcement of valid patent rights. Therefore, this court reverses the district court's decision imposing sanctions on Valley and Valley's counsel. This court also denies, on the same reasoning, Arachnid's motion on appeal for sanctions under Federal Circuit Rule 38.