45 F.3d 430
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Gregory C. KRUG, Individually and as the Trustee of the
Carol E. Krug (1974) Trust, Plaintiff-Appellant,
v.
Marion W. WATSON, Individually, William D. WATSON,
Individually and as Conservator for Marion W.
Watson; and First Tennessee Bank, N.A.,
Defendants-Appellees.
 No. 93-6171.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1994.
 
 Before: JONES and BATCHELDER, Circuit Judges; BECKWITH, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Gregory A. Krug, appeals the district court's dismissal of his action alleging breach of contract against Marion Watson, William Watson, and First Tennessee Bank, N.A. The district court also awarded sanctions to First Tennessee. For the following reasons, we affirm.
 
 I.
 
 2
 Marion Watson owned fifty-four shares of Roddy Coca-Cola Bottling Co., Inc. In 1989, a director of Roddy Coca-Cola Bottling, Inc. offered to purchase Marion Watson's Roddy shares for $3,000 per share. William Watson, as conservator to Marion Watson, retained Krug's services as an attorney to determine whether the offer represented the true value of the stock and to structure a transaction to minimize the tax liability if Marion Watson accepted the offer.
 
 
 3
 In March of 1990, Krug negotiated an option agreement under which Roddy Coca-Cola Bottling, Inc. would purchase an option to buy the Roddy shares at $5,000 per share. Apparently, the Roddy option agreement was never executed. Instead, Krug, as managing general partner of the Krug Investments partnership, entered into an option agreement with Marion Watson. Krug maintains that he did this because he believed a buyer (either Roddy Coca-Cola Bottling or another party) would pay more than $5,000 per share and because the Watsons needed cash immediately. Krug Investments agreed to pay Marion Watson $5,100 per share: $200,000 up front for the option and an additional $75,400 if the option was exercised. If Krug Investments received an acceptable offer, it would execute its option to acquire the Roddy stock under the Krug Investments option agreement and simultaneously sell the stock to the purchaser.
 
 
 4
 Krug Investments and Marion Watson (via William Watson) also entered into a profit splitting agreement, under which William Watson would receive fifty percent of the profit resulting from the resale of either the Roddy shares or the option. Furthermore, William Watson executed on behalf of Marion Watson an irrevocable limited power of attorney, permitting only Krug to sign the Roddy stock certificates. Although lacking documentation, Krug also contends that William Watson agreed to act as Krug's agent concerning the Krug Investments option agreement and to follow all of Krug's orders.
 
 
 5
 By April 19, 1990, the Watsons had delivered the certificates representing the Roddy stock to an escrow agent, Geoffrey Emery, in accordance with the Krug Investments option agreement. The parties agreed that, in the event of a dispute, Mr. Emery was entitled to tender the shares into the custody of a court.
 
 
 6
 On May 5, 1991, the Knox County Chancery Court dissolved Krug Investments and appointed First Tennessee's predecessor as receiver.[1] In its opinion, the chancery court stated that Krug was "enjoined from interfering with the Receiver or the property of the Partnership." The Tennessee Court of Appeals upheld the chancery court's order. The chancery court subsequently held Krug in contempt, citing eight "willful and knowing violation[s] of the Injunction" by Krug.
 
 
 7
 On or around February 15, 1993, Mr. Emery, the escrow agent, filed a Motion for an Interpleader and, pursuant to the order of the chancery court, Mr. Emery deposited the Roddy certificates into the registry of that court "for the benefit of whomsoever of parties the Court may decree to be entitled to the shares...." The chancery court's order dismissed Mr. Emery from the action. On April 7, 1993, the chancery court ordered that,
 
 
 8
 upon payment of the final additional consideration of $75,400.00 by First Tennessee Bank National Association, Receiver for Krug Investments (the "Receiver"), on behalf of the Partnership ... the Receiver is entitled to the shares of Roddy.
 
 
 9
 Krug v. Krug, No. 105013-2, slip op. at 1 (Tenn.Ch.Ct. Apr. 7, 1993).
 
 
 10
 On April 6, 1993, Coca-Cola Bottling, Inc. formally announced that it would purchase Roddy Coca-Cola Bottling, Inc. Krug refused to sign the Roddy stock certificates because he believed Roddy planned to give a better price to Roddy family members than to minority shareholders. However, despite the irrevocable power of attorney and Krug's direct order not to sign, William Watson signed the Roddy certificates on April 22, 1993.
 
 
 11
 Krug sued William Watson for lost profits from the stock transaction, alleging that Watson violated the power of attorney and their agreement that only Krug could sign the stock certificates. Krug also sued William and Marion Watson for his attorney fees in negotiating the original option agreement with Roddy Coca-Cola Bottling. Krug sued First Tennessee Bank to enjoin it from paying William Watson under the profit splitting agreement.
 
 
 12
 The district court dismissed Krug's claims against the Watsons and First Tennessee and granted sanctions to First Tennessee. Krug does not appeal the dismissal of his claims against the Watsons, but appeals only the dismissal and sanctions in favor of First Tennessee.
 
 II.
 
 13
 Krug seeks an injunction against First Tennessee because "if First Tennessee pays Watson the [consulting] Fee, Watson he [sic] will flee the jurisdiction of this court." Krug claims that his "sole reason" for filing suit against First Tennessee was to allow it to avoid breach of contract liability for refusing to pay the profit splitting agreement's consulting fee to William Watson.
 
 
 14
 Krug lacks standing to pursue this appeal because he has stated no personal injury fairly traceable to unlawful conduct of First Tennessee, and likely to be redressed by the relief sought, independent of his claims against the Watsons. See Allen v. Wright, 468 U.S. 737 (1984). Krug has not appealed the dismissal of his claim against William Watson for lost profits as a result of the exercise of the option and the sale of the Roddy stock. The district court appropriately held that Krug lacked standing to bring that claim since the lost profits claim, if there was one, belonged to Krug Investments, not to Krug personally. Once the chancery court appointed First Tennessee as receiver for Krug Investments, only First Tennessee had standing to complain of any wrongs to Krug Investments.
 
 
 15
 Krug has not appealed the dismissal of his claim against William Watson for breach of the terms of the power of attorney. While we think the district court erred when it held that Krug had stated a claim against William Watson personally for violation of the power of attorney, it is apparent that the claim should have been dismissed. That power of attorney empowered Krug to do no more than the grantor of the power could have done in regard to the stock in question. The stock over which Krug held the power was the subject of an option agreement; the option was the property of the receivership; and the receiver was ordered by the chancery court to exercise the option. Once the chancery court ordered that First Tennessee exercise the option, the power of attorney provided no basis upon which Krug could refuse to sign over the stock certificates, Tenn.Code Ann. Sec. 34-6-108(d) (1991), and no basis for any claim against Watson. However, the district court also found that Krug could recover no more than nominal damages from this perceived breach and therefore dismissed the claim for lack of subject matter jurisdiction, and as we have noted, that dismissal has not been appealed.
 
 
 16
 Thus the dismissal of both of Krug's claims is final, and there is no injury which Krug personally can claim which would support invoking this court's jurisdiction to enjoin First Tennessee from performing under the profit splitting agreement.
 
 
 17
 The district court awarded limited sanctions to First Tennessee in the form of a reasonable attorney fee. This court reviews the imposition of Rule 11 sanctions for abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990). Given the facts of this case and Krug's conduct, we find that the district court did not abuse its discretion. Krug's claims were utterly baseless and needlessly frustrated the defendants' attempts to comply with the chancery court's orders in this matter.
 
 III.
 
 18
 For the forgoing reasons, we AFFIRM the district court's dismissal of the claim against First Tennessee and the award of sanctions.
 
 
 
 *
 The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Originally, the chancery court appointed Valley Fidelity Bank and Trust Company as receiver in this action filed by Gregory Krug's mother seeking dissolution of Krug Investments. First Tennessee subsequently purchased Valley Fidelity