**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 14-4259, 14-4370, 14-4371, and 14-4372
_____

KEVIN A. THOMAS,
                         Appellant in 14-4259

v.

DEBORAH SHAW, ESQ.;
NORMAN BARILLA, ESQ.;
JOHN DICOLA, JR.;
DOLORES DICOLA;
HOLLY LYN THOMAS

                         Holly Lyn Thomas, Appellant in 14-4370
                         Delores Dicola, Appellant in 14-4371
                         John Dicola, Jr., Appellant in 14-4372

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-11-cv-01344)

District Judge: Honorable Joy Flowers Conti

Submitted Under Third Circuit LAR 34.1(a)
October 8, 2015

BEFORE: FUENTES, SMITH, and BARRY, *Circuit Judges*

(Filed: December 2, 2015)

1

_____

OPINION[*]

_____

FUENTES, *Circuit Judge*:

Plaintiff, Kevin Thomas, brought this action against his ex-wife, Holly Thomas,

her parents, John DiCola, Jr. and Dolores DiCola (collectively the "DiColas"), and their

attorneys, Norman Barilla and Deborah Shaw. Thomas claims that Defendants conspired

to deprive him of his constitutional due process rights during the course of state custody

proceedings related to his son. He further alleges that Defendants conspired to violate his

constitutional rights and that, as a result of their actions, he suffered from intentional

infliction of emotional distress.[1]

Defendants moved for summary judgment on all counts of the complaint.[2]

Additionally, the DiColas and Holly Thomas each filed motions for sanctions under Fed.

R. Civ. P. 11. The District Court granted the motions for summary judgment, finding that

Plaintiff failed to present any evidence to support his claims. The court, however, denied

the motion for Rule 11 sanctions. On appeal, Plaintiff contends that the District Court

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

[2] Shaw did not move for summary judgment, as the District Court granted Shaw's motion to dismiss. In consequence, Shaw is not a party to this appeal.

erred because it resolved factual issues against him which should have been left to a jury. Defendants argue that the District Court properly entered judgment in their favor because Plaintiff has failed to present any evidence in support of his claims. The DiColas and Holly Thomas separately contend that the District Court improperly denied their motion for sanctions under Rule 11 because, they argue, Plaintiff's claims are frivolous and vexatious.

For the reasons that follow, we will affirm.

## I.

Plaintiff and his ex-wife, Holly Thomas, are the divorced parents of a minor child. The DiColas are Holly Thomas's parents. Barilla, an attorney practicing in Lawrence County, Pennsylvania, is a high school classmate and friend of John DiCola, Jr. Shaw, also an attorney, is Barilla's former legal partner. Judge John Hodge is a judge presiding on the Lawrence County Court of Common Pleas. For a number of years, Plaintiff and Holly Thomas have been embroiled in a custody dispute concerning their son.[3]

In 2004, custody proceedings regarding the Thomas's minor son commenced in Allegheny County, Pennsylvania. Thereafter, Holly Thomas moved to Lawrence County, Pennsylvania. As a result of her move, her attorney petitioned to have the proceedings transferred to Lawrence County, where it was assigned to Judge Hodge. Shaw, Barilla's

---

[3] We note that, while Judge Hodge was originally a party to this lawsuit, the claims against him were eventually dismissed with prejudice on grounds of judicial immunity.

3

legal partner at the time, was eventually appointed Guardian Ad Litem ("G.A.L.") for the Thomases' child during the proceedings.[4]

During the custody proceedings, Plaintiff apparently became agitated with Judge Hodge's handling of the case. In particular, he criticized Judge Hodge's initial decision to appoint Shaw as G.A.L. He also claimed that Holly Thomas taunted him at one point about the fact that Judge Hodge was now presiding over the case. Plaintiff eventually concluded that Defendants had conspired to have the case transferred to Lawrence County so that Judge Hodge could manipulate the proceedings in Holly Thomas's favor. The day after he filed the instant action in U.S. District Court, Judge Hodge recused himself from the case.

In broad terms, Plaintiff claims that John DiCola, Jr. and Barilla supported Judge Hodge in his judicial election campaign and, after some bartering amongst the parties, Judge Hodge agreed to handle the custody proceedings in a manner that favored Holly Thomas. The second amended complaint therefore paints DiCola as a pillar in local politics and a longtime friend of Judge Hodge. Plaintiff claims that Judge Hodge's reputation had been tainted by scandal and that, without DiCola's political support, Judge Hodge would not have been elected to the bench. He further claims that Judge Hodge explicitly agreed to help DiCola's daughter, Holly Thomas, gain an advantage in custody proceedings. Barilla, because of his relationship with both Judge Hodge and DiCola, also

---

[4] After Barilla began providing legal advice to Holly Thomas and the DiColas about a potential joint purchase of a bakery, Shaw withdrew as G.A.L. due to perceived conflicts of interest by Plaintiff and his attorney.

4

allegedly facilitated and bolstered this scheme. Defendants also allegedly met on several occasions to discuss how to aid Holly Thomas in the custody proceedings.

During discovery, Plaintiff testified that a local attorney and former assistant to Barilla, Luanne Parkenon ("Parkenon"), approached him at a social gathering and informed him that Barilla and Judge Hodge shared a long-time relationship. He says that, at the time, Parkenon told him that Barilla probably supported Judge Hodge during his judicial election and that Judge Hodge had regularly visited Barilla's office. Parkenon could not, however, provide any specific dates, times, or other details regarding the meetings. Moreover, in a sworn affidavit, Parkenon also could not recall whether Judge Hodge or Barilla had any connection to DiCola. She further explained that she had not worked for Barilla for over ten years before speaking to Plaintiff and therefore could not recall whether DiCola, Barilla, and Judge Hodge maintained a relationship or ever met with one another.

For their part, DiCola and Judge Hodge each denied that any of the interactions alleged by Plaintiff ever took place. For a period of time, DiCola served as Township Supervisor and Director of Public Services in Neshannock Township in Lawrence County. DiCola and Judge Hodge both denied ever consulting on any legal matters while DiCola was employed in that capacity. They further denied taking any steps to manipulate the assignment of the custody proceedings. Barilla acknowledged his relationship with DiCola and admitted that he knew Judge Hodge from their time working in adjacent buildings in a nearby town. However, he also denied ever using his relationships with DiCola or Judge Hodge to affect the custody proceedings. During his

5

own deposition, the only evidence that Plaintiff could identify to support his claims was that "as we moved through the case, from outset on down it became apparent the judge was disinterested in the case itself but, rather, in serving the interests of his long-time friend, John DiCola, and his long-time friend [sic] daughter, Holly."[5] Plaintiff could not provide any other factual detail to bolster his claim of a conspiracy.

## II.

In order to support a cause of action for a federal civil rights claim under 42 U.S.C. § 1983, a plaintiff must show that (1) he was deprived of a right, privilege, or immunity secured by the Constitution or the laws of the United States; and (2) that the deprivation was caused by a person while acting under the color of state law.[6]

Moreover, as to establishing a conspiracy specifically involving a judge, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."[7] To succeed on his claims, a plaintiff must establish the existence of "an agreement between the state court judges and [d]efendants to rule in favor of [defendants]."[8] Bare allegations that a conspiracy must

---

[5] (Joint App. at 671.)

[6] *Basista v. Weir*, 340 F.2d 74, 79 (3d Cir. 1965).

[7] *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

[8] *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citing *Dennis*, 449 U.S. at 28).

6

have existed simply because of "concerted action of a kind not likely to occur in the absence of an agreement" are insufficient.[9]

Plaintiff's principal argument is that a conspiracy existed between Defendants and Judge Hodge to deprive him of his constitutional due process rights. However, as the District Court noted, there must be some specific facts which tend to show a meeting of the minds and some type of concerted activity. A plaintiff cannot rely merely on subjective suspicions and unsupported speculation. In granting summary judgment in favor of the Defendants, Chief Judge Conti also referred to Thomas's "vague and conclusory allegations that a conspiracy must have existed simply because of how poorly he believe[d] that Judge Hodge handled his case."[10] We agree with that attribution.

Here, it is clear that Plaintiff's claims could not survive summary judgment. There is an utter void in the evidence regarding Parkenon's alleged statements or suggestions that any of the Defendants took part in a conspiracy to undermine the custody proceedings. And, as noted below, Plaintiff relies solely on his own testimony and speculation to support his claims. Yet, the only testimonial evidence provided by Plaintiff during his deposition was, put generously, underwhelming. For instance, although Plaintiff's theory rested largely upon his belief that DiCola and Judge Hodge had a political relationship, Plaintiff simply testified that it was "standard routine" for

---

[9] *Great W. Mining*, 615 F.3d at 178.
[10] *Thomas v. Barilla*, No. CIV.A. 2:11-1344, 2014 WL 4721755, at *8 (W.D. Pa. Sept. 22, 2014).

DiCola to exchange "favors for favors" with political allies.[11]  Plaintiff offered no other viable documentary or testimonial evidence to support his claims.

In sum, we find that the District Court properly concluded that there was no evidence in the record to support Plaintiff's Section 1983 claim or conspiracy allegations against the Defendants.  The District Court therefore properly granted Defendants' motions for summary judgment on these claims.

### III.

Following the District Court's ruling on the merits, several of the Defendants also moved for sanctions under Fed. R. Civ. P. 11, which the Court denied.  The DiColas and Holly Thomas now separately appeal that ruling.  They argue that Plaintiff's claims were patently false, frivolous, and asserted in flagrant bad faith.  In response, Plaintiff argues that the District Court properly denied Defendants' motion for sanctions because Defendants failed to describe, with specificity, the alleged conduct that violated Rule 11.

We review a district court's decision to impose sanctions for abuse of discretion.[12] Rule 11 provides in relevant part: "By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (3) the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or

---

[11] (Joint App. at 671-72.)

[12] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1357 (3d Cir. 1990).

8

discovery . . . ." Therefore, the meaning of the Rule is plain: A party who signs a pleading or other paper without first conducting a reasonable inquiry may be sanctioned.[13] The test under Rule 11 is an objective test of reasonableness which is aimed at discouraging pleadings having no factual basis.[14]

While Plaintiff's claims ultimately did not succeed, the District Court found that sanctions were not appropriate because Plaintiff's claims were "not frivolous or abusive."[15] We, too, find that sanctions were not supported by the record, and thus the District Court did not abuse its discretion by denying Defendants' motion under Rule 11.

## IV.

For substantially the same reasons set forth in the well-reasoned and thorough opinion of the District Court, we affirm the entry of summary judgment in favor of the Defendants and the denial of Defendants' motion for sanctions under Rule 11.[16]

---

[13] *Ellis v. Beemiller, Inc.*, 287 F.R.D. 326, 338 (W.D. Pa. 2012).

[14] *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1278 (3d Cir. 1994).

[15] (Joint App. at 24.)

[16] In light of the District Court's conclusion that there was no evidence to support Plaintiff's claim that there was a conspiracy which included his former spouse, her father and mother, her attorney, and the state court judge presiding over this case, and upon our extensive review of the record, we believe this case may warrant damages under Federal Rule of Appellate Procedure 38. Under that Rule, we require a separately filed motion and reasonable opportunity to respond.